Lowell **MEYERHOFF** and Donna Meyerhoff, **individually, and as Administrators of the Estate of Kevin Lowell Meyerhoff, deceased, Plaintiffs–Appellants,**

v.

**MICHELIN TIRE CORPORATION and Timpte Trailer Company, Defendants–Appellees.**

Lowell **MEYERHOFF** and Donna Meyerhoff, **individually, and as Administrators of the Estate of Kevin Lowell Meyerhoff, deceased, Plaintiffs–Appellees,**

v.

**MICHELIN TIRE CORPORATION, Defendant–Appellant,**

and

**Timpte Trailer Company, Defendant.**

**Nos. 94–3185, 94–3205.**

United States Court of Appeals, Tenth Circuit.

Nov. 27, 1995.

Richard D. Cordry (Gregory D. Bell and Frances A. Hartman with him on the briefs), Cordry, Hund & Hartman, Wichita, Kansas, for Meyerhoffs.

Richard C. Hite (Arthur S. Chalmers with him on the brief), Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kansas, for Michelin Tire Corporation.

Steven M. Kerwick (Trisha A. Thelen on the brief), Foulston & Siefkin, Wichita, Kansas, for Timpte Trailer Company.

Before MOORE, ANDERSON and BALDOCK, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

## INTRODUCTION

This is a products liability action brought in diversity by the survivors of Kevin Meyerhoff, who was killed when a tire he was inflating exploded. His survivors sued the tire manufacturer, Michelin Tire Corporation, and the product seller, Timpte Trailer Company, under various theories including negligent failure to warn. The district court determined in pretrial proceedings that Timpte was entitled to summary judgment. After trial and a verdict for the plaintiffs, the district court granted judgment as a matter of law in favor of Michelin.

The Meyerhoffs appeal, claiming sufficient evidence exists in the record to support a jury verdict against both defendants, or, in the alternative, that they are entitled to a new trial. For the reasons set forth below, we affirm.

## FACTS

Kevin Meyerhoff worked as a truck driver, hauling grain for the John Fischer Trucking Company in Ellis, Kansas. Meyerhoff operated the company's only truck, a tractor-trailer rig owned by the company's sole shareholder, John Fischer. Meyerhoff was responsible for making deliveries and maintaining the truck.

In January 1988, Fischer purchased a new grain trailer from Timpte Trailer Company in Commerce City, Colorado. At the time of purchase, Fischer made a special request that the trailer be outfitted with Michelin 11R24.5 XDHT tires. The tires were designed for use on the drive wheel of an 18–wheel semi, and Fischer had requested the tires with that ultimate use in mind. He planned to remount the tires on his truck once he returned to Kansas.

Timpte agreed to Fischer's special request and contacted an authorized Michelin dealer, J.W. Brewer Tire Company in Denver, Colorado. J.W. Brewer delivered the tires, and Timpte had them mounted on the trailer. When Fischer returned with the grain trailer to Kansas, he removed the Michelin tires from the trailer, mounted them on the truck, and replaced the trailer tires with the tires from the truck. Meyerhoff then drove the truck with the Michelin tires for about one year, pulling the trailer between 90,000 and 100,000 miles.

During that time, and for an indeterminate length of time, Meyerhoff inadvertently drove the truck while the air pressure in one of the tires was much lower than the recommended 100 pounds per square inch. On the morning of March 10, 1989, Meyerhoff arrived at Fischer's shop to find the tire deflated. He removed the tire from the truck and patched a hole in it. He then began to reinflate it to its recommended pressure. He leaned the tire against another truck in Fischer's shop, attached the air hose, and stood nearby as the tire inflated. As he did so, the tire suddenly exploded through the sidewall.

The tremendous force of the air escaping from the large truck tire, and possibly a piece of the tire itself, struck Meyerhoff in the stomach. The blast ruptured Meyerhoff's diaphragm and main pulmonary artery and displaced the large bowel and stomach into his chest cavity. He died a short time later of the resulting internal bleeding.

Inspection of the Michelin tire revealed that it had developed "circumferential wrinkling" from being run while underinflated. This phenomenon is characterized by creases or wrinkles around the circumference of the tire. The load on the underinflated tire

weakens or breaks the internal steel belts, causing significant weakening of the tire sidewall. Upon reinflation, the force of the air ruptures the weakened sidewall, causing the air to escape suddenly and, in this case, with fatal consequences.

## PROCEDURAL HISTORY

In 1991, Lowell and Donna Meyerhoff filed this wrongful death and survivorship suit in Kansas state court, individually and as administrators of their son's estate. They named as defendants Michelin Tire Corporation and Timpte Trailer Company. The Meyerhoffs sought damages related to the injuries and death of their son under theories of negligence, strict products liability, and breach of warranty. They later amended their complaint to include a claim for punitive damages against Michelin.

After removing the case to federal court, the defendants moved for summary judgment on all claims. The district court granted the motion of Timpte Trailer, finding that Timpte had no duty to warn Meyerhoff of the hazard that caused his death. The court also granted Michelin's motion on the design defect claim as well as the motions of both defendants on the breach of warranty claims. However, the court denied Michelin's motion on the failure to warn claim, finding that material issues of fact required resolution by a fact finder.

The case against Michelin was tried to an eight person jury in October 1993. At the close of the Meyerhoffs' evidence, the district court directed a verdict for Michelin on the punitive damages claim and denied a similar motion by Michelin on the underlying failure to warn claim. At the close of all the evidence, Michelin renewed its motion and the court again denied the motion on the failure to warn claim. The court then submitted the case to the jury, which returned a verdict for the Meyerhoffs. The jury based liability on Michelin's failure to place warnings on the sidewall of the tire. The jury found no fault, however, based on Michelin's warnings in its literature.

The jurors assessed damages at $334,193.45, apportioning fault as follows: 11% to Michelin, 14% to Meyerhoff, 10% to nonparty J.W. Brewer Tire Company, and 65% to nonparty Fischer. Applying Kansas law, the district court fixed the award at $36,761.28, or 11% of the total damages.

Michelin then renewed its motion for judgment as a matter of law and the Meyerhoffs moved for a new trial. The district court granted Michelin's motion and denied the motion for a new trial. The court determined the Meyerhoffs had failed to produce legally sufficient evidence at trial to support their theory that Michelin acted unreasonably in omitting warnings from the tire itself.

The Meyerhoffs appeal the district court's legal rulings granting summary judgment in favor of Timpte Trailer, granting judgment as a matter of law in favor of Michelin, and denying their own motion for a new trial. Michelin cross-appeals the district's court's determination on summary judgment that Michelin owed Meyerhoff a duty to warn.[1]

## DISCUSSION

### 1. *Timpte Trailer's Duty to Warn*

■ We first address the Meyerhoffs' contention that the district court erred in granting summary judgment in favor of Timpte Trailer on the failure to warn claim. We review the grant of summary judgment de novo, applying the same standard applicable in the district court. *Koch v. Shell Oil Co.,* 52 F.3d 878, 880 (10th Cir.1995). Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Id.*

The Meyerhoffs contend in this appeal that Timpte owed their son a duty to warn him of the danger in question, on two separate grounds. First, they argue that Timpte had a duty to pass on warnings it received from Michelin. Second, they argue Timpte had an

---

1. As a separate issue, the Meyerhoffs have moved for an order allowing them to supplement the record on appeal. We grant the motion.

independent duty as a product seller to warn of dangers of which it either knew or had reason to know.

The Meyerhoffs start with the proposition that "[a] manufacturer's immediate vendee certainly has a duty to convey *adequate* warnings that it has received from a manufacturer." *Mason v. Texaco, Inc.*, 741 F.Supp. 1472, 1489 (D.Kan.1990), *aff'd on other grounds*, 948 F.2d 1546 (10th Cir.1991), *cert. denied*, 504 U.S. 910, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992). They argue from this proposition that Timpte owed a duty as a "vendee" to pass on Michelin's warnings. Timpte, on the other hand, points out that it was not the "immediate vendee" of the Michelin tires and therefore had no such duty.

■ We are bound in this diversity case by Kansas substantive law. *Cf. Koch*, 52 F.3d at 880. We are therefore controlled by expressions of the Kansas Supreme Court. *See, e.g., id.* at 884 n. 5. The Kansas decisions make clear that a product seller has a duty to warn its customers of those dangers of which it either knows or has reason to know. *E.g., Jones v. Hittle Service, Inc.*, 549 P.2d 1383, 1391, 1395 (1976); *see also* Kan. Stat.Ann. § 60–3306 (incorporating rule into products liability statute). This is in fact the second basis the Meyerhoffs assert in support of their argument and the only one we find to accurately reflect applicable Kansas law. To the extent the Meyerhoffs contend that Timpte had a duty to pass on warnings it received from Michelin or J.W. Brewer, we view that argument as a subset of the duty to warn consumers about dangers of which Timpte knew or should have known.

■ We first address the Meyerhoffs' contention that Timpte failed to pass on Michelin's warnings. The undisputed material facts show Timpte never received Michelin's literature containing the warnings at its Commerce City, Colorado, location. J.W.

Brewer did not ship any such information along with the tires. We agree with the district court that if Timpte did not receive the warnings, it had no reason to know of them and therefore no duty to communicate them to its customers.

The Meyerhoffs argue, however, that evidence in the record shows Timpte did receive 350 Michelin Truck Tire Limited Warranties at its headquarters in Wayne, Nebraska, prior to Fischer's purchase of the tire in question. They point to the following information in the Limited Warranties to support their contention that Timpte knew or should have known of the hazard in question:

> Procedures for the proper retreading and repair of Michelin truck tires are contained in a Michelin Retreading and Repair Manual and should be carried out only by qualified personnel with proper equipment. See a Michelin truck tire dealer....

This information by itself is insufficient, as a matter of law, to give Timpte knowledge or put it on notice that tires operated while underinflated explode upon reinflation. It therefore makes no difference whether Timpte received the Limited Warranties in Nebraska or Colorado. Nothing about the information cited creates a jury question on Timpte's duty to warn.[2]

The Meyerhoffs next contend that Abner Gene Autrey, an equipment manager employed by Michelin, provided Timpte multiple copies of the Michelin Truck, Industrial & Off–The–Road Data Books and other technical bulletins containing specific warnings about the hazard in question, which the jury found to be adequate. While Autrey's testimony could support a finding that delivery of these materials was actually made, it does not establish when. The Meyerhoffs have produced no evidence that relevant technical bulletins or booklets were distributed to Timpte by Autrey or anyone else before the date Fischer purchased the Michelin tires.[3]

---

**2.** Contrary to the Meyerhoffs' contention, this conclusion has no bearing on *Michelin's* liability. The record contains sufficient evidence of warnings in other Michelin literature to support a reasonable jury determination that Michelin adequately warned of the hazard in question. *See, e.g.*, Michelin Truck, Industrial & Off–The–Road

Data Book, Appellants' App. at 269–72 (warning not to repair tires damaged while run underinflated, with pictures).

**3.** Autrey's deposition testimony on this point merely reads:

Accordingly, the Meyerhoffs have failed to raise a fact question on whether Timpte knew or should have known of the warnings in the tire data booklets or technical bulletins when it sold the tires to Fischer.

Finally, the Meyerhoffs argue that, independent of any Michelin literature, Timpte knew or had reason to know the Michelin tire could explode upon reinflation after being run underinflated. They argue that both the parts manager and the salesman for Timpte in Commerce City, Colorado, knew of the danger involved.

The relevant testimony of David A. Durand, parts manager at the time of the purchase, is as follows:

Q: All right. In your work at Timpte, do you have any responsibility for mounting or demounting tires?

A: No.

Q: In your work at Timpte, have you ever been informed that a standard truck tire inflated with 75 pounds of air has the potential internal force of 46,510 pounds, enough to throw a 40–pound object over the Empire State Building or raise a 3,000–pound car 15 feet in the air?

A: Not that I can recall. I've been told they're dangerous.

Q: Who has told you that?

A: Oh, anybody that's worked around them, I guess.

Q: What do you understand the danger to be?

A: Death.

Appellants' App. at 260. Similarly, Ronald E. Dietz testified as follows:

Q: [W]hat was your job title or position?

A: Sales representative.

Q: Okay. In your capacity as a sales representative, sir, what did you do for the Timpte Trailer Company?

A: I called on customers, current and prospects, and marketed our product to them.

Q: And what specifically was the product that you were marketing?

Q: Sir, earlier you indicated that you provided to Timpte a copy or some copies of a truck tire data booklet; is that right?

A: With Timpte at that time, it was their grain trailer.

*Id.* at 245.

Q: Okay. When were you first informed that somebody had been injured, and in fact somebody had died, as a result of a Michelin tire exploding upon reinflation that had been sold by yourself?

A: In general, I believe it was three or four months ago. I think. You know, I can't remember the date when he called.

Q: Okay. Mr. Dietz, would it be a fair statement that, as far as your practice back in '88, when you were selling these tires—Timpte trailers, that it wasn't your practice to sit down with the customers and go through any of the tire warranty books, discussing with them the dangers of reinflation of truck tires after repair?

A: I believe that would be a fair statement.

Q: As a matter of fact, wouldn't it be a fair statement, sir, that until this case come [sic] along, you had never heard of anyone dying as a result of reinflation of a truck tire?

A: I could say that I've never heard of anybody that directly affected what I had done [sic]. I have seen document—documents on 20/20 and things such as that, that I think everybody has heard of stuff like that. But as a direct result or something that I was close to, no.

*Id.* at 251.

Q: Do you know of anybody that—than that incident, that's been injured while working on a tire, for any reason?

.    .    .    .    .

A: And, yes, I do.

Q: (By Mr. Rogers) Could you tell me about that, please.

A: I wasn't there, but the man who owns D & J Tire Service had a tire blow up on him one time while he was inflating it.

Q: What would his name be?

A: Yes.

Appellants' App. at 267.

A: Jim Sherwood.

.　　.　　.　　.　　.

Q: Do you know any more circumstances than that?

A: No, I don't.

*Id.* at 252–53.

Q: While you were working with Timpte, did you ever have an occasion where a customer brought one of the trailers back for repair of a tire?

A: No.

*Id.*

A: In regard to the answer of what happened to D & J, I believed until today that it was a rim that came off. And I talked with D & J Tire Service this morning, because they were doing work for me there, and I asked them to recall that, and that was an inflation problem, he told me.

So it wasn't a rim coming off that I had already—always perceived that it was. I—it's something that I never really thought about in—I don't—I have limited understanding about tires.

Q: You're a trailer salesman, aren't you?

A: Right. I'm careful when I inflate my tires on my car, whether it's hot, whether it's cold out. I want to be sure that when I'm inflating them that it's cold, only because it's just—it's general knowledge.

*Id.* at 254.

We agree with the district court that this evidence raises no issue of fact regarding Timpte's duty to warn. No reasonable jury could conclude from such evidence that Timpte knew or should have known of the dangers associated with reinflating worn underinflated tires. Such evidence certainly does not prove these witnesses knew of the *specific* danger in question, as the Meyerhoffs have argued. At most, it would allow a jury to find that Timpte employees—who were in the business of selling trailers—had some general knowledge that danger could accompany reinflation of a truck tire. As the district court rightly concluded, "[t]his general knowledge is *not* knowledge of the specific hazard involved in this case, and, even as-

suming Timpte had some independent duty to warn, is not sufficient to create a jury question." Appellants' App. at 30 n. 11.

In sum, we find that the Meyerhoffs failed to present sufficient evidence to allow a reasonable jury to find Timpte liable for failing to warn of the hazard that led to their son's death. Because the undisputed facts show Timpte did not know or have reason to know of the hazard, Timpte had no duty to warn customers of that hazard. For these reasons, we affirm the district court's grant of summary judgment in Timpte's favor.

2. *Michelin's Motion for Judgment as a Matter of Law*

▇ The Meyerhoffs next contend that the district court erred in granting Michelin's renewed motion for judgment as a matter of law. Our review of that legal determination is de novo. *Riggs v. Scrivner, Inc.,* 927 F.2d 1146, 1149 (10th Cir.), *cert. denied,* 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). Judgment as a matter of law is appropriate "only if the evidence, viewed in the light most favorable to the nonmoving party, 'points but one way and is susceptible to no reasonable inferences supporting' the nonmoving party." *Id.* (quoting *Zimmerman v. First Federal Savings & Loan Ass'n,* 848 F.2d 1047, 1051 (10th Cir.1988)).

▇ Kansas substantive law provides that every products liability action must be based on a defective condition in the product, regardless of the theory of recovery. *See, e.g., Lane v. Redman Mobile Homes, Inc.,* 5 Kan.App.2d 729, 624 P.2d 984, 988 (1981). A product, though perfectly designed and manufactured, may be defective if not accompanied by adequate warnings of its dangerous characteristics. *See Mays v. Ciba–Geigy Corp.,* 233 Kan. 38, 661 P.2d 348, 362–63 (1983). "In determining warning issues, the test is reasonableness. To impose liability on a manufacturer, the plaintiff must show negligence on the part of the manufacturer." *Johnson v. American Cyanamid Co.,* 239 Kan. 279, 718 P.2d 1318, 1324 (1986). Thus our inquiry on review is whether, under the standard set out above, legally sufficient evidence existed to support the jury's finding that Michelin was negligent in failing to place

a warning of the hazard in question on the side of its tire.

■ At trial, the Meyerhoffs' primary theory of recovery was that a warning should have been placed in yellow or some other contrasting color on the sidewall of the tire. To support this theory, their counsel called Loren Forney as an expert witness to testify that it would be feasible to do so. The district court would not allow Mr. Forney to testify to that effect, finding he was not qualified to offer expert testimony on the contrasting color theory. The Meyerhoffs now argue that excluding Mr. Forney's testimony was error.

We review a trial court's exclusion of expert testimony for abuse of discretion. *Broadcort Capital Corp. v. Summa Medical Corp.*, 972 F.2d 1183, 1194–95 (10th Cir.1992). We find no such abuse in this case. In conducting a voir dire examination of Mr. Forney, counsel for Michelin established that he had not worked for a tire manufacturer since 1960; that he had never worked in the manufacturing of radial tires; that he did not know the manufacturing tolerances or related technical requirements for putting colored letters on truck tire sidewalls; and that no manufacturer was currently putting colored letters on tires the size of the Michelin XDHT's. *See* Appellee's App. at 234–42. Given this showing, the court properly exercised its discretion in excluding the proffered testimony. Absent such testimony, no evidence admitted at trial showed Michelin could feasibly have provided a warning on its truck tire in a contrasting color.[4]

■ That left the Meyerhoffs with the fallback theory that Michelin was negligent for failing to place a warning in black letters on the black tire. Both sides agree, and the district court recognized, that Michelin could feasibly have produced a black-on-black warning. The only remaining question was whether under such circumstances Michelin should have placed such a warning on its tire to meet its duty of reasonable care.

The testimony of the Meyerhoffs' own experts at trial established that a black-on-black warning would not be adequate to warn. Mr. Forney testified, for example:

Q: Now, as to warnings on the side of tires in black rubber that were placed there by other tire manufacturers in 1987, you don't believe those are effective, do you?

A: They're better than nothing.

Q: I questioned you, though, as to whether you thought they were effective?

A: *I would have to agree, I don't think they are effective....*

Appellants' App. at 156 (emphasis added). Ronald Wells likewise testified only that a black warning on a black tire was "better than nothing." *Id.* at 185; *see also id.* at 183–84; Appellee's App. at 274–75 (black-on-black warnings inadequate). As Michelin correctly notes, "better than nothing" is not the relevant legal standard. The inquiry for the jury was whether Michelin's actions were those of a reasonable manufacturer. There is no evidence from the Meyerhoffs' experts that failing to supply a black-on-black warning fell below the standard of reasonable care.

■ The Meyerhoffs argue, however, that Michelin's own expert testimony supports their proposition. We decline to address the merits of this argument, which was not presented to the district court nor ruled on below. *See Walker v. Mathers (In re Walker)*, 959 F.2d 894, 896 (10th Cir.1992) (" '[A] federal appellate court does not consider an issue not passed upon below.' ") (quoting *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976)).

■ The Meyerhoffs finally submit that expert testimony was not required to prove their case. They argue that the jury could reasonably have concluded based on nonexpert evidence that Michelin could have provided an adequate warning. They point to a Goodyear tire introduced into evidence and

---

4. The Meyerhoffs did introduce evidence at trial that other tires had warnings in white on their sidewalls. Michelin established, however, that none of the tires were truck tires or similar in size to the Michelin tire at issue. The district court instructed the jury that it was not to consider any evidence that Michelin failed to meet its duty of care by failing to put a warning in white or any other color on its tire sidewall.

argue the tire itself is proof that Michelin could feasibly have produced an adequate warning. They contend that adequacy of a warning is peculiarly a jury determination for which expert testimony is unnecessary.

The Kansas Supreme Court has suggested that expert testimony "should be considered" in a failure to warn case. *Humes v. Clinton,* 246 Kan. 590, 792 P.2d 1032, 1043 (1990). We need not decide whether this proposition necessarily holds true in every case, for the Meyerhoffs chose to prove their case through expert testimony. They did not introduce the Goodyear tire and simply argue to the jury that it was evidence from which the jury could find adequate warnings were possible. Rather, they chose to examine their experts and submit the resulting testimony as the basis for their arguments. As Michelin aptly notes, "This is not a case where plaintiffs attempted to make a warning defect claim without an expert. This, instead, is a case where plaintiffs' experts did not support plaintiffs' theory." Appellee's Br. at 31.

Expert testimony in this case informed the jury on the technical and logistical considerations of a manufacturer in Michelin's position charged with a duty to provide warnings. All of the Meyerhoffs' expert testimony tended to show that it was reasonable for a tire manufacturer to exclude a black warning from the black tire because it was an ineffective means of communicating the message.[5] None of the testimony supported the proposition that a reasonable manufacturer would have placed a warning in black on the side of the tire. Where the Meyerhoffs' own expert testimony pointed all one way, a jury could not reasonably reject that testimony while simultaneously returning a verdict in the Meyerhoffs' favor. *Cf. Humes,* 792 P.2d at 1043 (no genuine issue of fact on adequacy of warning where plaintiffs' own experts testi-

fied warning was adequate); *Lorbeer v. Weatherby,* 190 Kan. 576, 376 P.2d 926, 930 (1962) ("A jury is not authorized arbitrarily ... to disregard uncontradicted and unimpeached testimony, nor to disregard the only evidence upon a material question in controversy and return a verdict in direct opposition."); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (judgment as a matter of law appropriate where evidence is "so one-sided" that a jury could reach "but one reasonable conclusion").

While the ultimate determination of the adequacy of any warning is for the fact finder, the decision must be based on the evidence in the case. We find the jury's decision to be unsupported in light of that evidence. The Meyerhoffs' experts failed to establish that Michelin could feasibly have produced an adequate warning on its tire. Consequently, no reasonable jury acting solely on the basis of the evidence at trial could have found that Michelin acted negligently in limiting its "circumferential wrinkling" warnings to its literature and omitting such warnings in black from its black sidewalls. The district court therefore correctly concluded that Michelin was entitled to a judgment as a matter of law.

### 3. *Plaintiffs' Motion for a New Trial*

Lastly, the Meyerhoffs submit they are entitled to a new trial. They argue that the district court erred in prohibiting the jury from considering punitive damages and in excluding evidence to support that claim. They further argue the jury committed misconduct in its deliberations. We find each of these arguments to be moot in light of our holding that the case as tried left nothing for the jury to decide.

The Meyerhoffs' evidence tended to establish that Michelin could have formulated a warning with appropriate wording and placed it in black on the side of the tire. The thrust of their argument on appeal is that such evidence is a proper basis for reversal. But no reasonable jury could find the proffered warnings to be "adequate" unless they accepted the black-on-black medium as adequate to convey the message—a position rejected by the Meyerhoffs' own witnesses.

---

**5.** The Meyerhoffs argue that the trial court erred in holding they needed to show their proposed warning would be both "adequate" and "effective." We believe the trial court properly recognized that the adequacy of any proposed warning in this case depended on two separate elements. First, the wording of the warning had to be "adequate" to properly inform of the danger involved. Second, the medium for conveying the message had to be "effective"—that is, "adequate" to convey the message.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the United States District Court for the District of Kansas.[6]

---

**6.** Because of our disposition of the Meyerhoffs' appeal, we need not reach the merits of Michelin's cross-appeal.