Charles G. KOCH, Plaintiff–Appellant,

v.

**SHELL OIL COMPANY and Feed Specialties Co., Inc.,** Defendants–Appellees.

No. 93–3318.

United States Court of Appeals, Tenth Circuit.

April 13, 1995.

Stephen P. Weir of Hein, Ebert and Weir, Chtd., Topeka, KS, for plaintiff-appellant.

Gregory Schultz (Hal D. Meltzer and Gregory N. Pottorff, with him on the brief), of Turner and Boisseau, Chtd., Overland Park, KS, for defendant-appellee Shell Oil Co.

Ernest Nordstrom (James P. Nordstrom, with him on the brief), of Fisher, Patterson, Sayler & Smith, Topeka, KS, for defendant-appellee Feed Specialties Co., Inc.

Before ANDERSON and HOLLOWAY, Circuit Judges, and DOWNES,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Charles Koch (Koch or plaintiff herein), plaintiff in this diversity product liability action governed by Kansas law, appeals the district court's orders granting summary judgment to defendants Shell Oil Company and Feed Specialties, Inc., and denying plaintiff's motion to alter or amend the judgment entered in favor of Shell Oil Co. The district court entered judgment for defendants after determining that plaintiff's claims were barred by the ten-year statute of repose contained in Kan.Stat.Ann. § 60–513.

The dispositive questions on appeal are whether the exceptions contained in Kan. Stat.Ann. 60–3303(d), 60–3303(b)(2)(B) or (D) save plaintiff's action from being barred by the statute of repose. We hold: first, that plaintiff's cause of action does not fall within subsection 60–3303(d) because the chemical product Rabon, which is alleged to have caused plaintiff's injury, is not a "harmful material" as defined in § 60–3303(d)(2) and we affirm the district court on that issue; second, that the district court erred in concluding that the plaintiff may not invoke the exceptions contained in 60–3303(b)(2)(D); and third, that there is no genuine issue of material fact on this record which implicates the fraud or intentional misrepresentation exception contained in subsection 60–3303(b)(2)(B), and we affirm the district court on that issue. Other arguments raised by the plaintiff, as discussed below, lack merit.

## I. BACKGROUND

The basic facts are not in dispute. From April 1979 through October 1981, Mr. Koch fed his dairy cows Rabon, a product containing an oral pesticide, which was manufactured by Shell and distributed by Feed Specialties, Inc. He purchased his last batch of Rabon in September 1981, but he ceased using the product at the end of October because he suspected it was involved in the death of a number of his cows. Additionally, during the 1980s Mr. Koch experienced "continuing health problems" himself. R. Vol. I at 27.

Although Mr. Koch obtained autopsies on some of his dead cows, no traces of Rabon were found. In March 1991, experts developed a new test which could detect Rabon in

* The Honorable William F. Downes, District Judge, United States District Court for the District of Wyoming, sitting by designation.

fat tissue. In April 1991 these experts confirmed the presence of Rabon in frozen tissue taken both from Mr. Koch and from one of his bulls that had died in 1981. This confirmation occurred approximately nine years and seven months after Mr. Koch's last purchase of Rabon. Almost seven months later, on November 25, 1991, Mr. Koch brought this product liability suit against Shell and Feed Specialties, alleging that Rabon caused the death of a substantial portion of his dairy herd, his loss of business, and injuries to himself. Thus, this suit was commenced more than ten years after Mr. Koch last purchased and used Rabon, but the alleged injuries occurred, at least in large part, within ten years of such purchase and use.

After limited discovery, Shell and Feed Specialties moved for summary judgment, arguing that Mr. Koch's action was not exempt from Kansas' general ten-year statute of repose, Kan.Stat.Ann. § 60–513(b), by virtue of the exceptions contained in Kan.Stat. Ann. § 60–3303(d) or other provisions of section 60–3303. The district court agreed, and entered summary judgment first in favor of Shell, then, on its renewed motion, in favor of Feed Specialties.

On appeal, plaintiff argues that the district court erred in numerous respects. First, plaintiff contends that subsection 60–3303(d) is a statute of limitations, rather than a statute of repose, and, therefore, should be broadly construed to effect its remedial purpose. The statute's purpose, plaintiff maintains, is to provide an exception to the ten-year statute of repose for all people who develop a latent disease, the cause of which is not discovered until ten years or more after the act giving rise to the cause of action. *See* Br. for Appellant at 18.

Second, plaintiff argues that the district court's construction of subsection 60–3303(d) violates plaintiff's state and federal constitutional rights. Third, plaintiff argues that the district court's construction of subsection 60–3303(d) conflicts with the other provisions of section 60–3303 and that those provisions save plaintiff's claims even if subsection (d) does not. Finally, plaintiff argues that there are material issues of fact as to whether Rabon actually presents an unreasonable risk

of injury to health or the environment and whether Shell intentionally misrepresented facts about Rabon or fraudulently concealed information about Rabon, so as to trigger the provisions of subsection 60–3303(b)(2)(B).

▮ We review the grant of summary judgment de novo, applying the same legal standard as the district court, *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990), and, as we are sitting in diversity, we apply Kansas substantive law. *Flight Concepts Ltd. Partnership v. Boeing Co.*, 38 F.3d 1152, 1156 (10th Cir.1994).

▮ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991). In reviewing the grant of summary judgment, we view the record in the light most favorable to the nonmoving party. *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Because statutes of limitation and repose must be raised as affirmative defenses, Feed Specialties and Shell have the burden of proof on the issue of whether plaintiff's action was timely filed. *See Admire Bank & Trust v. City of Emporia*, 250 Kan. 688, 829 P.2d 578, 582 (1992). Plaintiff has the burden of showing that his action falls within one of the exceptions to the statute.

## II. DISCUSSION

### A. *The Latent Disease Exception.*

The focus of this case below, and certainly on appeal, is whether Mr. Koch's claims fall within the latent disease exception to the statute of repose. The latent disease exception is contained in Kan.Stat.Ann. § 60–3303(d), which provides as follows:

(d)(1) In a product liability claim against the product seller, the ten-year limitation, as defined in K.S.A. 60–513, and amendments thereto, shall not apply to the time to discover a disease which is latent caused by exposure to a harmful material, in which event the action shall be deemed to have accrued when the disease and such

disease's cause have been made known to the person or at the point the person should have been aware of the disease and such disease's cause.

(2) The term "harmful material" means ... any chemical substances commonly known as asbestos, dioxins, or polychlorinated biphenyls, whether alone or as part of any product; or any substance which is determined to present an unreasonable risk of injury to health or the environment by the United States environmental protection agency pursuant to the federal toxic substances control act, 15 U.S.C. § 2601 et seq., or the state of Kansas, and because of such risk is regulated by the state or the environmental protection agency.

This statutory subsection, as its terms indicate, covers latent diseases arising from "exposure to a harmful material." As relevant here, "harmful material" is defined in subsection 3303(d)(2) as "any substance which *is determined to present an unreasonable risk* of injury to health or the environment *by the United States environmental protection agency pursuant to the federal toxic substances control act,* 15 U.S.C. § 2601, et seq., *or the state of Kansas,* and *because of such risk* is regulated by the state or the environmental protection agency." (Emphasis added.)

There is no dispute that neither Rabon nor its major constituent chemical, tetrachlorvinphos, has been listed by the EPA as a harmful material which presents an unreasonable risk of injury pursuant to the Toxic Substances Control Act ("TOSCA") at any time pertinent to our analysis of the record, or by the State of Kansas. In fact, pesticides (which this product is) are specifically excluded by TOSCA. 15 U.S.C. § 2602(2)(B)(ii); *see also* 7 U.S.C. § 136(u) (defining "pesticide"). Because Rabon has not been so determined, the district court held that the claims in this lawsuit do not fall within the plain language of the latent disease exception.

On appeal, Mr. Koch does not directly contest the specific conclusion of the district court regarding the absence of an unreasonable risk determination by the EPA under TOSCA, or by the State of Kansas, with respect to Rabon. Rather, he principally argues either (1) for a different and broad reading of the statute which will effect legislative intent to create a remedy for all latent diseases caused by harmful chemicals, and recognize that Rabon is such a material as evidenced by its regulation in various ways by the federal government and/or the State of Kansas; or (2) for a holding that the statute, as construed by the district court, is unconstitutional. In effect, he asks us to rewrite the statute.

■ 1. The district court stated that the statute was unambiguous, but that resort to legislative history would add helpful clarification as to legislative intent. Mem. and Order at 8–9. Thereafter, the court traced the legislative history of the statute, noting that the restrictive definition of "harmful materials" contained in subsection 3303(d)(2) was added by conference committee at the end of legislative consideration of various proposals. *Id.* at 13. Specifically, the wording restricted a broad reference in H.B. 2689 to latent diseases caused by harmful materials. *Id.* at 12–13. As Shell and Feed Specialties point out in their brief on appeal, the term "unreasonable risk of injury to health or the environment" is contained in TOSCA. 15 U.S.C. § 2605(a). Br. for Appellees at 11, 24. And, the Act provides a procedure by which the Administrator of the EPA may make a determination that a chemical regulated by TOSCA presents an unreasonable risk of injury to health or the environment. 15 U.S.C. §§ 2603–2606.

We need not further restate what the district court ably developed in its opinion. The legislative history supports the view that the legislature intentionally confined the application of the statute and rejected the broader remedy contained in the House Bill. And, contrary to Mr. Koch's argument, there is nothing in that reading of the background of this statute which necessarily renders the district court's interpretation of the statute unjust, absurd or contradictory to other provisions of the statute. *See* Br. for Appellant at 25. Thus, we disagree with Mr. Koch's argument that

[t]he only correct legal interpretation of the statute [according to legislative intent]

is to include *all* persons who have suffered harm by a chemical *which actually does, or can,* prevent (sic) an unreasonable risk of harm to man or the environment.... *Id.* at 31.

We apply the same reasoning and conclusion to Mr. Koch's arguments that because pesticides in general, or Rabon or tetrachlorvinphos (an organophosphate) are in fact regulated in various ways by federal and state law, they are included within the statute by its terms or as it ought to be read to effect legislative intent. *Id.* at 26–27.

As to federal regulation, Mr. Koch argues:

Rabon or tetrachlorvinphos is without doubt regulated as a chemical substance by the United States Environmental Protection Agency and the D.O.T.; as a toxic waste by the D.O.T. the EPA and OSHA; as a pesticide under FIFRA; as a food additive under FFDCA; and as a chemical substance under TOSCA, depending on intended use, *because* of its potential for risk. It is therefore regulated by the State of Kansas under the same public policy of protecting the public from chemicals which have the potential to cause an unreasonable risk of injury to health or environment.

Br. for Appellant at 27. The Kansas statutes relied upon by Mr. Koch either below or on appeal are: the Kansas Emergency Planning and Community Right–to–Know Act, Kan. Stat.Ann. § 65–5701, et seq.; part of the Agricultural Chemical Act, Kan.Stat.Ann. § 2–2204 and Kan.Admin.Regs. 4–13–1; and Kan.Admin.Regs. 28–65–3.

Pointing to these various statues Mr. Koch asks:

If this chemical did *not* actually pose an unreasonable risk of harm *unless* regulated, then *why regulate it in the first place?*

The *only reason* for regulation is to control the risk. Thus *by actually regulating* the chemical the state *has determined* that it needs regulation. Why does it need regulation? Because it poses a risk of harm. Br. for Appellant at 27. He adds to this argument the point that TOSCA is merely a gap filling statute which is only meant to address chemicals not regulated elsewhere, and Rabon is regulated elsewhere, as alleged above. *Id.* at 20–21.

The district court thoroughly analyzed these statutes and regulations cited by Mr. Koch in light of the statutory language in subsection 3303(d)(2) and concluded that none of them satisfies the plain language of the statute. We adopt the court's analysis. There is no escaping the district court's conclusion that the only way to accept Mr. Koch's position would be to judicially rewrite the statute. We decline to do so, and hold that a latent disease caused by exposure to Rabon is not covered by the exception in Kan.Stat.Ann. § 60–3303(d) because Rabon does not fall within the clear definition of "harmful material" contained in subsection 3303(d)(2).[1]

■ 2. Mr. Koch raises various state and federal constitutional arguments based on his premise that subsection 3303(d), as applied, is an unconstitutional denial of due process, equal protection, separation of powers, and his guarantees under section 18 of the Kansas Bill of Rights.[2] These arguments need no extended analysis. Subsection 3303(d) does not eliminate any rights vested in Mr. Koch before its passage. It confers rights with respect to injuries caused by defined harmful materials. Rabon's non-inclusion is not ameliorated by striking down rights given to others, even if we discerned grounds to do so (which we do not). Mr. Koch is really asking us again, in another context, to re-

---

1. Subsection 60–3303(d)(2) vests the determination of whether Rabon actually poses an unreasonable risk of harm to health or the environment solely with the EPA or the State of Kansas, thereby eliminating it as a material fact issue. *Cf. Jenkins v. Amchem Prods., Inc.,* 256 Kan. 602, 886 P.2d 869, 881 (1994) (noting that the adequacy of a product's label or warnings is to be determined by the EPA Administrator, not a jury).

2. In denying Mr. Koch's motion to alter or amend, the district court noted that it was unnecessary to consider the constitutional arguments, since Mr. Koch failed to raise them in response to Shell's original motion for summary judgment. However, Mr. Koch did incorporate these arguments into his response to Feed Specialties' renewed motion for summary judgment, and therefore we consider the merits.

write rather than strike down the statute. That is not our province. In short, Mr. Koch's constitutional arguments are without merit.

The only possible exception would be an attack not on subsection 3303(d), but on the general statute of repose in subsection 513(b). If Mr. Koch's constitutional broadside is to be so read, we reject it. The Kansas Supreme Court has upheld the statute of repose. *See Tomlinson v. Celotex Corp.*, 244 Kan. 474, 770 P.2d 825, 830–33 (1989) (*overruled on other grounds, Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 820 P.2d 390 (1991)); *see also Admire Bank*, 829 P.2d at 586; *Hendricks v. Comerio Ercole*, 763 F.Supp. 505, 508 (D.Kan.1991).

Furthermore, as we hold below, other exceptions contained in subsection 3303(b) may apply to save all or part of Mr. Koch's claims, so his argument that Kansas has left him no remedy is at the very least premature.

### B. *Other Exceptions.*

■ Subsection 60–3303(b) contains exceptions in addition to the one contained in ·subsection 3303(d): [3]

60–3303. Useful safe life ten-year period of repose; evidence; latent disease exception; reviving certain causes of action.

. . . .

(b)(1) In claims that involve harm caused more than 10 years after time of delivery, a presumption arises that the harm was caused after the useful safe life had expired. This presumption may only be rebutted by clear and convincing evidence.

. . . .

(2)(B) The ten-year period of repose established in paragraph (1) of this subsection does not apply if the product seller intentionally misrepresents facts about its product, or fraudulently conceals information about it, and that conduct was a substantial cause of the claimant's harm.

. . . .

(D) The ten-year period of repose established in paragraph (1) of this subsection shall not apply if the harm was caused by prolonged exposure to a defective product, or if the injury-causing aspect of the product that existed at the time of delivery was not discoverable by a reasonably prudent person until more than 10 years after the time of delivery, or if the harm caused within 10 years after the time of delivery, did not manifest itself until after that time.

The district court held, and Shell and Feed Specialties continue to urge, that for various reasons these subsections of 3303(b) do not apply to Mr. Koch's claims. The district court concluded that the exceptions in question are overridden by the general statute of repose, subsection 60–513(b), by virtue of subsection 3303(c), which provides:

(c) Except as provided in subsections (d) and (e), nothing contained in subsections (a) and (b) above shall modify the application of K.S.A. 60–513, and the amendments thereto.

Mem. and Order at 7–8. *See* Br. for Appellees at 42–43.

The court and defendants also assert that subsection 3303(b) applies only to claims relating to durable goods, except for the latent disease exception in subsection 3303(d). Mem. and Order at 8, n. 6; Br. for Appellees

---

[3] The defendants have argued on appeal, and the district court held in its Sept. 15, 1993, Memorandum and Order denying Mr. Koch's Rule 59 motion, that Mr. Koch failed to timely raise below the applicability of exceptions in subsection 60–3303(b), other than the subsection 3303(b)(2)(B) misrepresentation/concealment exception. The court rejected the arguments on that basis, but held in the alternative that the provisions of 60–3303(a) and (b) are subject to section 60–513 anyway.

Mr. Koch first raised the applicability of subsection 3303(b)(2)(D), briefly, in his response to Feed Specialties' first summary judgment motion. *See* Appellant's App., Vol. I, at 110–11. He subsequently incorporated this response into his response to Shell's motion to the extent that Shell raised the same issues. *See id.*, Vol. II, at 352. In his Rule 59 motion regarding the Shell motion, Mr. Koch further argued that subsections 60–3303(b)(1) and (b)(2)(D) applied. *See id.* at 461–64. Finally, in response to Feed Specialties' renewed summary judgment motion, Mr. Koch incorporated his motion to alter or amend the Shell summary judgment order. *Id.* at 442. We conclude that Mr. Koch raised the applicability of subsection 3303(b)(2)(D) and identified supporting facts sufficiently to properly put the issue before the district court.

at 41–42. And, finally, Shell and Feed Specialties argue that the exceptions in question do not apply since they are exceptions to subsection 3303(b)(1), which relates to harm caused more than ten years after the delivery of the product, and Mr. Koch's injury, if any, from Rabon was caused within ten years after the time of delivery. *Id.* at 41–42.

All of these arguments, and the district court's holding on these points, are erroneous.

With respect to subsection 3303(c), the Kansas Supreme Court stated in *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 831 P.2d 958 (1992): "It is sometimes claimed that subsection (c) nullifies the exemption provided in (b)(2)(D). We do not agree." *Id.* 831 P.2d at 968 (citation omitted); *see also Kerns ex rel. Kerns v. G.A.C., Inc.*, 255 Kan. 264, 875 P.2d 949, 956 (1994) (subsection 60–3303(c) "did not nullify the exceptions in 60–3303(b)(2)(D)"); *Baumann v. Excel Indus., Inc.*, 17 Kan.App.2d 807, 845 P.2d 65, 71 (1993) ("60–513(b) does not control over 60–3303(b).").[4]

Likewise, when dealing with prolonged exposure cases, the Kansas Supreme Court has not recognized the kind of limiting interpretation under subsection 3303(b)(1) that Shell and Feed Specialties now urge upon us. To the contrary, in *Harding*, an asbestos case, the Court clearly confirms the applicability of the exceptions in subsection 3303(b)(2)(D) to products where "useful safe life" is essentially a non sequitur.

> 60–3303(b)(2)(D) ... specifically exempts the type of injury alleged in the petition from application of the 10–year period of repose....
>
> ... Moreover, because 60–3303(b)(2)(D) already exempted from the 10–year repose provision causes of action involving harm "caused by prolonged exposure to a defective product ... exist[ing] at the time of delivery [that] was not discoverable by a reasonably prudent person," the revival provision of 60–3303, as amended in 1990, did not affect the existing exemption.

*Harding*, 831 P.2d at 968–69; *see also Gilger*, 820 P.2d at 395–401 (long-term exposure to carbon monoxide from leaking gas furnace).

Recently, the Court reviewed *Harding* and causes of action for injuries arising from prolonged exposure to a defective product, and once again it confirmed the availability of the exceptions contained in subsection 3303(b)(2)(D): "Those exceptions include situations where the harm is caused by prolonged exposure to a defective product and where the injury-causing aspect of the product was not discoverable by a reasonably prudent person within 10 years of the time of delivery of the product." *Kerns*, 875 P.2d at 956.[5]

Mr. Koch argues that the district court erred in failing to apply the exception in subsection 3303(b)(2)(B) for intentional misrepresentation or fraudulent concealment. We have reviewed the record and find that even had the court not found 60–3303(b)(2)(B) to be inapplicable, *see* Mar. 18, 1993, Mem. and Order at 8 n. 7; Sept. 15, 1993, Mem. and Order at 9; the proffered evidence on this point is insufficient to create a genuine issue of material fact. Therefore,

---

4. For an instructive discussion of this aspect of the statute, see *Speer v. Wheelabrator Corp.*, 826 F.Supp. 1264, 1266–72 (D.Kan.1993).

5. When we sit in diversity, we are controlled by expressions of the supreme court of the forum state. *See Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir.1994). Accordingly, we do not see the necessity of further analysis with respect to the wording of the statutes in question. To say the least, there is an abundance of legal literature with respect to the Model Uniform Product Liability Act (which has been neither uniformly adopted by the states nor interpreted by state supreme courts). *See, e.g., Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198, 204–07 (Colo.1992); *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 791 P.2d

1285, 1290–99 (1990); *Fraley v. American Cyanamid Co.*, 570 F.Supp. 497, 503 (D.Colo.1983); 44 Fed.Reg. 62714 (Oct. 31, 1979) (Final Model Uniform Product Liability Act); 44 Fed.Reg. 2996 (Jan. 12, 1979) (Draft MUPLA); Tami J. Johnson, Note, *Limiting Manufacturers' Liability for Aging Products*, 39 Drake L.Rev. 713 (1989–90); Robert A. Van Kirk, Note, *The Evolution of Useful Life Statutes in the Products Liability Reform Effort*, 1989 Duke L.J. 1689; Laurie L. Kratky, Comment, *Statutes of Repose in Products Liability: Death Before Conception?*, 37 Sw.L.J. 665 (1983); Bruce L. Schroeder, Comment, *Washington's Useful Safe Life: Snipping Off the Long Tail of Product Liability?*, 57 Wash.L.Rev. 503 (1982).

on remand, the court need not further address the exception in subsection 3303(b)(2)(B), but only the one in subsection 3303(b)(2)(D). We express no opinion on the applicability of this latter exception to Mr. Koch's facts. Nor do we express any opinion with respect to any issues that may remain as to accrual or limitations.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.