72 F.3d 138
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Carol B. SPROWLS, Vesta Lee Sprowls, John R. Sprowls, Jerry
L. Sprowls, Janice Kay Whitlow, Marjorie Kuhlman, Lucille
McComas, Ken McComas, Kevin McComas, Kathy Sue Rushing,
Nicky D. Sprowls, Sr., Donna Jean Williams, David Kent
Sprowls, Shelley Renea Vorndran, Trinca McComas, Karen
Cotton, Billy Dean Sprowls, Plaintiffs-Appellants,
v.
ORYX ENERGY COMPANY, successor by merger to Sun Exploration
and Production Company, Amax Oil & Gas, Inc.,
successor by merger to Ladd Petroleum
Corporation, Defendants-Appellees.
 No. 94-6103.
 No. 94-6461.
 United States Court of Appeals, Tenth Circuit.
 Dec. 20, 1995.
 
 ORDER AND JUDGMENT*
 Before HENRY, SETH, and BRISCOE, Circuit Judges.
 
 
 1
 Appellants are the owners of mineral interests underlying Section 14, Township 9 North, Range 8 West, Grady County, Oklahoma. Section 14 is a 640-acre oil and gas spacing unit established in 1977 which produces gas and gas condensate from the Tonkawa common source of supply.
 
 
 2
 Appellants brought this action against their oil and gas lessees, Oryx Energy Company and Amax Oil & Gas, Inc. They assert that Defendants failed to fully develop the lease and protect Section 14 from offset drainage. Oryx is the current operator of the Sprowls well drilled in the NE of Section 14 in 1980. Amax is the successor to Ladd, a prior operator on Section 14.
 
 
 3
 Appellants additionally allege that Oryx and Amax caused fraudulent drainage of Section 14 by their operation of a well in Section 13, which was drilled in close proximity to Section 14 pursuant to a topographical exception granted by the Oklahoma Corporation Commission ("OCC") in 1984.
 
 
 4
 The district court granted summary judgment to Oryx and Amax ("Appellees"), holding that Appellants were collaterally estopped from bringing their claims by an April 1990 OCC ruling. That ruling denied an application to despace Section 14, and determined that the Appellants' correlative rights were not violated. This appeal is from the district court's grant of summary judgment.
 
 
 5
 At issue is whether the causes of action amount to impermissible collateral attacks by Plaintiffs on the April 1990 OCC order. We review the grant of summary judgment de novo. See Koch v. Shell Oil Co., 52 F.3d 878, 880 (10th Cir.). We review a trial court's denial of a motion to reconsider for abuse of discretion. See Elsken v. Network Multi-Family Securities Corporation, 49 F.3d 1470, 1476 (10th Cir.).
 
 
 6
 In Fransen v. Conoco, 64 F.3d 1481 (10th Cir.), this court reiterated Oklahoma's doctrine that a party may not collaterally attack an order of the OCC. See Fent v. Oklahoma Natural Gas Co., 898 P.2d 126, 135 (Okla.) ("[j]udicial acts of the district court are protected from collateral attack in the same manner and with the same force as are [OCC] orders"); Woods Petroleum Corporation v. Sledge, 632 P.2d 393 (Okla.) (quiet title action to determine the rights of mineral owners was an impermissible collateral attack on a prior OCC order which adjudicated the equities of the parties and established the conditions under which additional wells could be drilled). See also Okla. Stat. Ann. tit. 52, 111 ("No collateral attack shall be allowed upon orders, rules and regulations of the [OCC] ... [but the sole method of review] shall be by appeal ... to the [Oklahoma] Supreme Court.").
 
 
 7
 The Fransen court additionally noted that "facts found administratively can have a preclusive effect in later legal proceedings." Fransen, 64 F.3d at 1492 (citing United States v. Utah Constr. & Mining Co., 384 U.S. 394, 421-22). Thus, if an OCC ruling or order included the resolution of a particular factual issue, then that determination may preclude relitigation of the issue in a suit on a different cause of action. Relitigation of an order, ruling, issue or factual determination that would essentially "avoid, defeat or deny the force and effect of the OCC's order ... [is] barred as a collateral attack on that order." Fransen, 64 F.3d at 1487.
 
 
 8
 In the OCC ruling at issue (April 1990), the Commission found that Section 14 could not be despaced from a 640-acre unit and respaced into 160-acre units. Order No. 346792 at 3. The OCC determined that such despacing "is not necessary under the conservation principles of preventing economic waste, and protecting correlative rights, since the existing well drains 616-acres and 182% of the amount that the unit is underlain." Id. As the district court noted, this necessarily includes a determination that Section 14 is not being subject to substantial uncompensated drainage. See Leck v. Continental Oil Co., 971 F.2d 604, 606 (10th Cir.).
 
 
 9
 Subsequent to the OCC order, and despite Appellants' opposition to the despacing request which would have permitted additional wells to be drilled in Section 14, Appellants on May 28, 1991 sent a letter to Oryx contending that Oryx had failed to protect Section 14 from excess drainage caused by the Oryx-operated Section 13 well mentioned above. Appellants further announced their belief that Oryx had failed to prudently develop and explore Section 14 and demanded that Oryx immediately drill a second well on Section 14 to protect against drainage. Oryx did not, and indeed pursuant to the OCC's order could not, drill an additional well in Section 14. Appellants then brought this action.
 
 
 10
 Appellants contend that the district court erred in granting summary judgment to the Appellees. Appellants contend that general issues of material fact precluded summary judgment, that an order of the OCC denying a despacing application cannot foreclose private claims in district court for drainage, and that the result reached by the district court denied them their right to due process and a jury trial. Finally, Appellants assert numerous reasons why the doctrine of collateral estoppel does not apply to bar their claims.
 
 
 11
 The claims asserted by Appellants, namely that the Appellees failed to protect Section 14 from offset drainage and that a well operated by Appellees caused the drainage, require a finding that offset drainage did indeed occur and thus that Appellants' correlative rights were violated. However, the OCC clearly determined that Section 14 was being effectively drained by the Sprowls well and that another well on Section 14 was not necessary to protect the correlative rights. It is clear that the OCC did make a determination as to whether Section 14 was being subjected to offset drainage. As stated above, a determination that drainage was not present is essential to the conclusion that Appellants' correlative rights were not violated. Further, our recent decision in Fransen as well as the Oklahoma statutory and case law set forth above lead us to conclude that this is precisely the sort of determination which cannot be collaterally attacked in subsequent actions. As the Fransen court noted, "[o]n a collateral attack, such as this, the district court had no jurisdiction to inquire into the facts determined in the OCC proceedings." Fransen, 64 F.3d at 1493. It is apparent that without express OCC authorization, only one well is permitted on this Section 14. See Okla. Stat. Ann. tit. 52, 87.1(c) and (d). There can be no breach of duty, implied or expressed within the lease, when an operator does not drill a well it cannot lawfully drill. Fransen, 64 F.3d at 1488. In short, neither the district court nor the operators could grant the relief demanded by the Appellants, namely that an additional well be drilled on Section 14. We agree with the district court that "to permit [Appellants] to prosecute this action would amount to an impermissible collateral attack on the Commission's Order." District Court Order (November 18, 1994).
 
 
 12
 We have carefully reviewed Appellants' remaining claims and find them to be without merit. The constitutionality of the preclusive effect of administratively determined facts in later legal proceedings is established. See Fransen, 64 F.3d at 1493 (disavowing dicta set forth in Tidewater Oil Co. v. Jackson, 320 F.2d 157 (10th Cir.), which suggested based upon due process concerns that ultimate facts determined in administrative proceedings are not binding in subsequent tort actions). See also United States v. Utah Constr. & Mining Co., 384 U.S. 394 (recognizing the application of res judicata to factual issues determined by an administrative agency acting in a judicial capacity). The relief requested and the applicable standard of review utilized likewise does not remove the preclusive effect of the OCC's conclusions.
 
 
 13
 As to Appellants' claims regarding their status in the administrative proceedings, their presence at the hearing was conceded. They were named respondents and could have testified. The OCC clearly had jurisdiction over the parties and the application for despacing.
 
 
 14
 The Order and Judgment of the district court is AFFIRMED.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470