NOT RECOMMENDED FOR PUBLICATION

**No. 17-5292**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JOSEPH W. EHRENFELT,                                     )
                                                        )
        Plaintiff-Appellant,                       )
                                                        )
v.                                                      )
                                                        )
JANSSEN PHARMACEUTICALS, INC., aka                      )   ON APPEAL FROM THE
Ortho-McNeil-Janssen Pharmaceuticals, Inc., aka         )   UNITED STATES DISTRICT
Ortho-McNeil Pharmaceutical Products, Inc.;             )   COURT FOR THE WESTERN
JANSSEN, L.P., fka Janssen Pharmaceutical               )   DISTRICT OF TENNESSEE
Products, L.P.; JOHNSON & JOHNSON; JANSSEN              )
RESEARCH & DEVELOPMENT LLC, fka Johnson                 )             OPINION
& Johnson Pharmaceutical Research &                     )
Development, LLC; JOHN DOES, 1-50 Inclusive,            )
                                                        )
        Defendants-Appellees.                      )

FILED

Jun 11, 2018

DEBORAH S. HUNT, Clerk

BEFORE:  GIBBONS, STRANCH, and BUSH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  Plaintiff Joseph Ehrenfelt brings this products liability suit against various divisions of Janssen Pharmaceuticals and Johnson & Johnson, the manufacturers and distributers of the drug Risperdal.  Ehrenfelt alleges that he developed gynecomastia as a side effect of using Risperdal.  Defendants respond that the flexible statute of repose located in the Kansas Product Liability Act, Kan. Stat. Ann. § 60-3303(b), is inapplicable and that the suit is therefore time-barred by operation of Kansas's general statute of repose, Kan. Stat. Ann. § 60-513(b).  The district court agreed and granted summary judgment to Defendants.  Because this suit is governed by the products liability statute of repose, we **REVERSE**.

## I.    BACKGROUND

Ehrenfelt first took Risperdal for a period of just over eight months beginning in October 1997, while he was a minor living in Kansas.  While hospitalized in February 2000, he again took Risperdal for a few weeks.  He discontinued his use of Risperdal for several years and then took the drug again from 2004 to 2006.

Ehrenfelt was first diagnosed with gynecomastia at the end of November 2000. Gynecomastia is the abnormal enlargement of breast tissue in males.  *See Breast Enlargement in Males*, MedlinePlus, https://medlineplus.gov/ency/article/003165.htm (last visited June 8, 2018). The diagnosing doctor believed his gynecomastia was "due to obesity" and stated this in Ehrenfelt's medical record.

During the years following Ehrenfelt's initial diagnosis, new information about Risperdal's side effects became publicly available.  The Risperdal label in use when Ehrenfelt began taking the drug indicated only that its "[s]afety and effectiveness in children ha[d] not been established" and that although gynecomastia "ha[d] been reported" among patients, its incidence was "rare," defined as "occurring in fewer than 1/1000 patients."  In 2006, the Risperdal label was changed to state that, in clinical trials of children and adolescents, gynecomastia was reported in 2.3% of patients.  The label, however, continued to denote gynecomastia as a "rare" adverse effect, which was still defined as occurring in fewer than one in one thousand patients.

According to Ehrenfelt, when he was diagnosed with gynecomastia again in August 2014, the nurse told him to research his past medications because one of them could have caused his condition.  Ehrenfelt alleges that it was only upon conducting research after his 2014 medical appointment that he learned about the link between Risperdal and gynecomastia.

Ehrenfelt moved from Kansas to Tennessee in 2009, and filed this suit in Shelby County Circuit Court on July 17, 2015 against corporations and individuals involved in developing,

marketing, and distributing Risperdal. Ehrenfelt's suit included claims for strict products liability, several varieties of negligence, reckless misconduct, breaches of warranty, fraud, and civil conspiracy. Defendants removed the case to federal court on the basis of diversity of citizenship. The district court ultimately granted summary judgment to Defendants on the ground that Ehrenfelt's claims were time-barred by Kansas's ten-year general statute of repose, Kan. Stat. Ann. § 60-513(b). Ehrenfelt timely appealed.

## II.    ANALYSIS

### A.    Scope and Standard of Review

We review a grant of summary judgment—including a grant of summary judgment on the basis of statutory construction—de novo. *See Great Am. Ins. Co. v. E.L. Bailey & Co.*, 841 F.3d 439, 443 (6th Cir. 2016); *Chambers v. Ohio Dep't of Human Servs.*, 145 F.3d 793, 800–01 (6th Cir. 1998). "Summary judgment is appropriate only when the evidence, taken in the light most favorable to the nonmoving party, establishes that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Great Am. Ins. Co.*, 841 F.3d at 443 (quoting *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012)).

This appeal turns on a discrete, purely legal issue: which of two Kansas statutes of repose controls in a products liability suit where the relevant harm was caused less than ten years after the product was delivered. If the strict ten-year statute of repose in Kan. Stat. Ann. § 60-513(b) governs, then Ehrenfelt's claim is time-barred. If, however, the more flexible statute of repose in Kan. Stat. Ann. § 60-3303(b) governs, then Ehrenfelt's claim might still be cognizable, depending on whether his case fits within one or more of the statutory exceptions specified in § 60-3303(b)(2)(D).

Determining which statute governs here entails an exercise in statutory interpretation. Kansas state courts, like their federal counterparts, interpret statutes against a backdrop of

established canons. Those canons guide our inquiry. First, we are mindful that "various provisions of an act *in pari materia* must be construed together in an effort to reconcile the provisions so as to make them consistent, harmonious and sensible. . . . An appellate court's duty, as far as practicable, is to harmonize different statutory provisions to make them sensible." *Kan. One-Call Sys., Inc. v. State*, 274 P.3d 625, 635 (Kan. 2012) (brackets, citations, and internal quotation marks omitted). In so doing, we "should attempt to give effect to every word and clause" in the statute. *State ex rel. Arn v. Consumers Coop. Ass'n*, 183 P.2d 423, 438 (Kan. 1947). If we are unable to harmonize two statutes, then we apply the "well-settled rule of law that 'statutes complete in themselves, relating to a specific thing, take precedence over general statutes.'" *Harding v. K.C. Wall Prods., Inc.*, 831 P.2d 958, 963 (Kan. 1992) (quoting *Szoboszlay v. Glessner*, 664 P.2d 1327, 1331 (Kan. 1983)).

As a federal court interpreting state laws, we look to "the final decisions of that state's highest court, and if there is no decision directly on point, then we must make an *Erie* guess to determine how that court, if presented with the issue, would resolve it." *Sutherland v. DCC Litig. Facility, Inc.* (*In re Dow Corning Corp.*), 778 F.3d 545, 548 (6th Cir. 2015) (quoting *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358–59 (6th Cir. 2013)). If our sister circuit whose boundaries include the relevant state has ruled on the issue, we "usually defer" to that interpretation "[u]nless the home circuit has 'disregarded clear signals emanating from the state's highest court pointing towards a different rule.'" *Id.* at 548–49 (quoting *Abex Corp. v. Md. Cas. Co.*, 790 F.2d 119, 125 (D.C. Cir. 1986)). This deference serves the important goal of avoiding the creation of "'the oddity of a split in the circuits over the correct application' of one state's law." *Id.* at 549 (quoting *Abex Corp.*, 790 F.2d at 125).

### B.    Interpreting the Kansas Statutes of Repose

Our analysis begins with the text of the two statutes of repose at issue.  Kan. Stat. Ann.

§ 60-513 provides:

> (a) The following actions shall be brought within two years: . . .
>
>> (4) An action for injury to the rights of another, not arising on contract, and not herein enumerated. . . .
>
> (b)  Except as provided in subsections (c) and (d),[1] the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.

These subsections together make up "[t]he general statute of limitations for tort actions." *Harding*,

831 P.2d at 961.  Subsection (a) "provides for a two-year limitation," while subsection (b)

"explain[s] how to determine when a cause of action accrues." *Id.*  The final clause of subsection

(b) operates as a general statute of repose, which "bars the cause of action after the 10-year period

even though the action may not have yet accrued." *Id.* at 968.

Kan. Stat. Ann. § 60-3303, a part of the Kansas Product Liability Act, provides, in relevant

part:

> (a) (1) . . . [A] product seller shall not be subject to liability in a product liability claim if the product seller proves by a preponderance of the evidence that the harm was caused after the product's "useful safe life" had expired. . . .  For the purposes of this section, "time of delivery" means the time of delivery of a product to its first purchaser or lessee who was not engaged in the business of either selling such products or using them as component parts of another product to be sold. . . .
>
> (b) (1) In claims that involve harm caused more than 10 years after time of delivery, a presumption arises that the harm was caused after the useful safe life had

---

[1] Subsections (c) and (d) provide special accrual and limitation rules governing certain types of health care and corporate suits, respectively.  Neither is relevant to this case.

> expired. This presumption may only be rebutted by clear and convincing evidence.
>
> (2) . . . (D) The ten-year period of repose established in paragraph (1) of this subsection shall not apply if the harm was caused by prolonged exposure to a defective product, or if the injury-causing aspect of the product that existed at the time of delivery was not discoverable by a reasonably prudent person until more than 10 years after the time of delivery, or if the harm caused within 10 years after the time of delivery, did not manifest itself until after that time.
>
> (c) Except as provided in subsections (d) and (e),[2] nothing contained in subsections (a) and (b) above shall modify the application of K.S.A. 60-513, and amendments thereto.

Insofar as § 60-3303 appears to both incorporate and override § 60-513, it is not a model of legislative clarity. *See Speer v. Wheelabrator Corp.*, 826 F. Supp. 1264, 1266 (D. Kan. 1993) (concluding, after "many hours" of legal research, that "it is virtually impossible to read the two statutory provisions in a logical manner that gives full effect to both provisions"). Kansas courts, however, have distilled certain principles about the meaning of and relationship between these statutes that guide our inquiry. First, § 60-3303(c)'s prohibition on modifying the application of § 60-513 does not "nullif[y] the exemption provided in (b)(2)(D)." *Harding*, 831 P.2d at 968. To the contrary, because "a specific statute should control over a general statute," § 60-513(b) "does not control over" § 60-3303(b). *Baumann v. Excel Indus., Inc.*, 845 P.2d 65, 71 (Kan. Ct. App. 1993). Second, § 60-3303(c) does not limit the applicability of the (b)(2)(D) exceptions to the circumstances described in subsection (d)—that is, to latent diseases caused by exposure to harmful materials. *See Kerns ex rel. Kerns v. G.A.C., Inc.*, 875 P.2d 949, 957 (Kan. 1994) (explaining that the trial court "applied the wrong statute" when it dismissed a claim relating to a defective fence as time-barred under § 60-513 because the court should have used the § 60-3303(b)

---

[2] Subsection (d) covers latent diseases caused by exposure to harmful materials; subsection (e) provides for limited retroactive applicability. Neither is relevant to this case.

framework). Thus, Kansas courts deciding products liability suits must generally work through § 60-3303(b)'s rule-and-exceptions framework rather than automatically applying the ten-year bar imposed by § 60-513.

Defendants do not contest these general precepts of Kansas law. Rather, they argue that the entire framework of § 60-3303(b), including its exceptions, is triggered if and only if (b)(1) itself applies—that is, if the harm at issue was "caused more than 10 years after time of delivery." Kan. Stat. Ann. § 60-3303(b)(1). According to Defendants, because Ehrenfelt was initially diagnosed with gynecomastia about three years after he began taking Risperdal, the harm was not "caused more than 10 years after time of delivery," *id.*, and none of § 60-3303(b) applies. Because § 60-3303(b) is inapplicable, Defendants argue that we must enforce the ten-year general statute of repose in § 60-513. Ehrenfelt responds that this argument requires a determination that § 60-513 controls over § 60-3303(b)(2)(D), even though Kansas courts have repeatedly held the exact opposite: that § 60-513 does not apply when the exceptions in subsection (b)(2)(D) are triggered.

### 1.   Kansas State Court Decisions

To resolve this dispute, we look first to decisions of the Kansas Supreme Court. *Sutherland*, 778 F.3d at 548. The Kansas Supreme Court has not addressed this precise legal argument, but it appears to have blessed the application of § 60-3303(b) even when harm was caused less than ten years after delivery. In *Harding v. K.C. Wall Products, Inc.*, Harding was diagnosed with malignant pleural mesothelioma eleven years after his last exposure to the defendant's asbestos-containing products; his estate filed suit two years after his diagnosis. 831 P.2d at 960. Defendants argue that *Harding* does not advance Ehrenfelt's cause. They argue that *Harding* properly falls within the ambit of § 60-3303(b) because the harm "occurred" when Harding was diagnosed. But the statute is concerned not with when a harm "occurred," but when it is "caused" and when it "manifests." *See, e.g.*, Kan. Stat. Ann. § 60-3303(b)(2)(D) (providing

an exception if the harm was "caused" within the ten-year window but "did not manifest" until later).  The mesothelioma at issue in *Harding* was caused when the plaintiff was exposed to asbestos; it manifested more than a decade later when he was diagnosed.  The Kansas Supreme Court concluded that subsection (b)(2)(D) "specifically exempts the type of injury alleged in the petition from application of the 10-year period of repose" in § 60-513.  831 P.2d at 968.  *Harding* therefore supports the proposition that § 60-3303(b) may properly be invoked even if the harm was caused less than ten years after delivery.

*Baumann v. Excel Industries, Inc.*, 845 P.2d 65 (Kan. Ct. App. 1993), a Kansas appellate decision, provides additional support for Ehrenfelt's argument.  *See Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) (explaining that a federal court "may rely on the state's intermediate appellate court decisions" in anticipating how the state's highest court would rule).  In *Baumann*, the plaintiff was injured by a lawn mower in the summer of 1988, 22 years after it was manufactured.  845 P.2d at 68.  The lawn mower left the defendant's control—that is, it was "delivered" within the meaning of Kan. Stat. Ann. § 60-3303(a)(1)—in either 1977 or 1978.  *Id.*  The court thoroughly examined the two statutes of repose before concluding that § 60-3303(b), not § 60-513(b), applied.  *Id.* at 68–71.  Nowhere in this analysis did the court acknowledge that the difference between 1977 and late 1978 could be significant.  In other words, the Kansas Court of Appeals did not find it necessary to determine whether the harm was "caused more than 10 years after time of delivery" to conclude that § 60-3303(b) applied.

### 2.    Tenth Circuit Decision

The Tenth Circuit, unlike Kansas courts, has directly considered and rejected Defendants' argument.  In *Koch v. Shell Oil Co.*, a dairy farmer sued the companies responsible for manufacturing and distributing the oral pesticide Rabon.  52 F.3d 878, 879–80 (10th Cir. 1995).  The farmer fed his cows Rabon from April 1979 to October 1981, at which point he ceased using

the product "because he suspected it was involved in the death of a number of his cows." *Id.* at 879. It was not until March 1991 that experts developed a test that could detect Rabon in cow fat tissue; the very next month, the farmer obtained positive results in tests of a deceased cow's tissue. *Id.* at 879–80. He filed suit in November of that year. *Id.* at 880.

The defendants in *Koch* made the exact argument that is now before us: "[Defendants] argue that the exceptions in question do not apply since they are exceptions to subsection 3303(b)(1), which relates to harm caused more than ten years after the delivery of the product, and Mr. Koch's injury, if any, from Rabon was caused within ten years after the time of delivery." *Id.* at 884. The Tenth Circuit relied on *Harding*, 831 P.2d at 968–69, and *Kerns*, 875 P.2d at 956, to reject that argument as "erroneous." 52 F.3d at 884. In a footnote, the *Koch* court explained that it was bound by the decisions of the Kansas Supreme Court and so "d[id] not see the necessity of further analysis with respect to the wording of the statutes in question." *Id.* at 884 n.5.

Because Kansas falls within the Tenth Circuit, we defer to that court's interpretation of Kansas law unless it has "disregarded clear signals emanating from the state's highest court pointing towards a different rule." *Sutherland*, 778 F.3d at 549 (quoting *Abex Corp.*, 790 F.2d at 125). We see no such clear signals here. As was previously described, one Kansas Supreme Court case and one Kansas appellate case contemplate exactly what *Koch* allows: applying § 60-3303(b) to cases involving harm caused less than ten years after delivery. *See Harding*, 831 P.2d at 968; *Baumann*, 845 P.2d at 71. Kansas courts have had more than twenty years to register their disagreement with *Koch*, and they have not done so. That silence, especially in light of two state court cases supporting the holding in *Koch*, is not a "clear signal" that *Koch* was wrongly decided.

Defendants argue against deference to *Koch* for two reasons. First, they argue that applying § 60-3303(b) when harm was caused less than ten years after delivery renders § 60-3303(c)

meaningless, thereby violating the requirement that we "give effect to every word and clause" in the statute where possible. *State ex rel. Arn*, 183 P.2d at 438. But subsection (c), which provides that "nothing contained in subsections (a) and (b) above shall modify the application of K.S.A. 60-513," is far from meaningless. Ehrenfelt argues that subsection (c) ensures that § 60-513 still applies where none of the exceptions in § 60-3303(b)(2)(D) are applicable. More importantly, subsection (c) refers to § 60-513 in its entirety—that is, to both the ten-year statute of repose and the two-year statute of limitations. Had the Kansas legislature intended subsection (c) to refer only to the ten-year statute of repose, it knew how to do so; the very next subsection of § 60-3303 does precisely that by referencing "the ten-year limitation, as defined in K.S.A. 60-513." Kan. Stat. Ann. § 60-3303(d)(1). Subsection (c) therefore serves the critical role of explaining that the Kansas Product Liability Act does not modify the traditional two-year limitations period.

Second, Defendants argue that the Tenth Circuit approach violates the plain text of the statute by crafting an exception that is broader than the rule. According to Defendants, analysis must begin with the general rule in § 60-3303(b)(1). Because subsection (b)(1) does not apply, its exceptions in subsection (b)(2)(D) cannot be triggered. Defendants' argument is not supported by Kansas caselaw; moreover, it creates a plain-text problem of its own. One of the exceptions in subsection (b)(2)(D) provides that the ten-year period of repose does not apply "if the harm *caused within 10 years* after the time of delivery[] did not manifest itself until after that time." *Id.* § 60-3303(b)(2)(D) (emphasis added). If the exceptions in subsection (b)(2)(D) apply only when harm is caused *more than ten years* after delivery, that statutory exception would be rendered not only meaningless, but internally contradictory. We are not persuaded that Kansas courts would adopt a reading that gives meaning to one clause in the statute only to vitiate another.

In sum, the Tenth Circuit has answered the question before us. Its interpretation of an ambiguous statute is supported by state caselaw. We therefore defer to our sister circuit's interpretation and hold that the exceptions in Kan. Stat. Ann. § 60-3303(b)(2)(D) apply even when the harm was caused less than ten years after delivery. The general statute of repose in § 60-513 does not operate to bar Ehrenfelt's suit.

That leaves the issue of whether Ehrenfelt has satisfied one or more of subsection (b)(2)(D)'s exceptions. *See, e.g.*, *Kerns*, 875 P.2d at 957 (explaining that even though § 60-3303(b) governed, the case was time-barred because the relevant exceptions did not apply). Because the district court resolved the case by applying the ten-year bar in § 60-513, it did not reach the issue of how properly to apply the § 60-3303(b)(2)(D) exceptions to the facts of this case. We therefore leave resolution of that question to the district court upon remand. *See Papas v. Buchwald Capital Advisors, LLC* (*In re Greektown Holdings, LLC*), 728 F.3d 567, 570 (6th Cir. 2013) (leaving for remand issues that "have not been adequately briefed and argued by the parties and were not addressed below").

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment and **REMAND** for further proceedings consistent with this opinion.